IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

AUGUSTINE MCLEOD,         )
                                 )
        Plaintiff,        )
                                 )
    v.                     )     CIVIL ACTION NO. 1:13cv235-CSC
                                 )                 (WO)
CAROLYN W. COLVIN,      )
Acting Commissioner of Social Security,   )
                                 )
        Defendant.       )

## MEMORANDUM OPINION

## I. Introduction

The plaintiff applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*, alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment, pursuant to

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1)     Is the person presently unemployed?
> (2)     Is the person's impairment severe?
> (3)     Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)     Is the person unable to perform his or her former occupation?
> (5)     Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The standard of review of the Commissioner's decision is a limited one.  This court

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla," but less than a preponderance; it "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (quotation marks omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III. The Issues

**A. Introduction**. The plaintiff was 52 years old on the date of administrative hearing. (R. 26). She has completed the ninth grade.[3] (R. 39). She has no past relevant work experience.[4] (R. 26). Following the hearing, the ALJ concluded that the plaintiff has severe impairments of "degenerative disc disease of the cervical and lumbar spines and substance abuse disorder." (R. 195). The ALJ concluded that the plaintiff had no past relevant work,

---

[3] On her disability report, McLeod indicated that she had completed the tenth grade. (R. 132)

[4] At the administrative hearing, McLeod testified that she did not work because she "always had someone to take care of [her]." (R. 42).

but, using the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2, as a framework and relying on the testimony of a vocational expert, she also concluded that there were a significant number of jobs in the national economy that the plaintiff could perform. (R. 27-28). Thus, the ALJ concluded that McLeod was not disabled because she has the residual functional capacity to perform light work with restrictions..

**B. Plaintiff's Claims**. As stated by the plaintiff, she presents two issues for the Court's review.

I.     The Commissioner's decision should be reversed because the ALJ failed to give great weight to the opinion of Ms. McLeod's treating physician, Dr. Roddy Cook.

II.    The Commissioner's decision should be reversed because the ALJ's finding that Ms. McLeod is capable of performing light work is not supported by substantial evidence.

(Doc. # 15, Pl's Br. at 6).

## IV. Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to her past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and her family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v.*

4

*Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981).  The ALJ must also state, with sufficient specificity, the reasons for her decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added).  Within this analytical framework, the court will address the plaintiff's claims.

    **A.    Treating Physician.**  McLeod argues that the ALJ improperly rejected her treating physician's opinion without providing sufficient reasons.  (Doc. # 13, Pl's Br. at 6-10).  According to the plaintiff, "[w]here medical evidence does not conclusively counter the treating physician's opinion, and no other good cause is presented, the Commissioner cannot discount the treating physician's opinion."  (*Id*. at 7).  Of course, this is not the standard for evaluating the treating physician's opinion.

    The law in this circuit is well-settled that the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985).  The Commissioner, as reflected in his regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring

> a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)). The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error. *Broughton*, 776 F.2d at 961-62.

There are, however, limited circumstances when the ALJ can disregard the treating physician's opinion. The requisite "good cause" for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, *or* where the evidence supports a contrary finding. Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence. *See Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).

On October 21, 2011, Dr. Roddy Cook completed a physical capacity evaluation and

6

a clinical assessment of pain assessing McLeod's impairments. (R. 391-92). Dr. Cook is not an orthopaedic surgeon, but practices with First Med of Dothan. According to Dr. Cook, McLeod's pain was severe enough to distract her from work, physical activity would increase her pain, and side effects from her medication would cause some limitations. (R. 392). He also opined that she could lift 10 pounds occasionally and 5 pounds frequently, sit for two hours in a work day, stand or walk for two hours and she would be absent from work four days per month. (R. 319). It does not appear that Dr. Cook examined McLeod on the date he completed the evaluation and pain assessment. Previously, Dr. Cook saw McLeod on March 15, 2011, March 31, 2011, July 8, 2011, August 23, 2011, and September 12, 2011. (R. 303, 300-01, 389-90). On March 15, 2011, McLeod sought a second opinion regarding a cyst on her liver. (R. 303). At that time, she complained of "some swelling on the right side of the neck . . . she has some muscle spasm of the back." (*Id*.) Dr. Cook prescribed pain medication. (*Id*.) On March 31, 2011, McLeod presented to Dr. Cook for a follow up visit for the cyst on her liver. (R. 301-02). She did not complain of neck or back pain. (*Id*.) On July 8, 2011, McLeod complained of hypertension and "pain in her neck." (R. 300). Dr. Cook prescribed medication for her hypertension. (*Id*.) On August 23, 2011, McLeod complained of pain in her neck. Dr. Cook's treatment note reflects the following:

> S:     This patient has radicular like pain of the right upper extremity. She had CT done at Dothan Diagnostics. We could not read this CD on our computer. She has some mid back pain and lower back pain also. We could not get the final report on the CT from Dothan Diagnostics as there is a computer glitch this morning.
>
> P:     We will try her on Prednisone 20 mg b.i.d. for six days, and then we

7

will give her some Lortab 5 with one refill.  She will return to the clinic in about two to three weeks.  We will recheck her at that time and try to make an assessment at that time also.

(R. 390).

On September 12, 2011, Dr. Cook noted that McLeod complained of "pain in her neck but she is somewhat better.  She has done much better.  She still has some degenerative disease [in] her neck and back."  (R. 389).

After reviewing the medical evidence, the ALJ gave Dr. Cook's opinion "little weight" because

it is conclusory and inconsistent with his own medical records.  Dr. Cook's support for his opinion was limited to the notation that she has chronic pain in the right upper extremity and shoulder and lumbar spine disc with chronic pain.  Dr. Cook began treating the claimant on March 15, 2011.  While he noted her reports of "some swelling" and "some muscle spasm," his treatment note was focused on an abnormal vascular screen that showed a hepatic cyst. He noted no abnormalities during a physical examination.  On March 31, 2011, he continued to address the cyst.  He assessed her with anechoic mass in the left lobe with no internal vascularity.  He counseled her to reduce her alcohol intake.  On July 8, 2011, his treatment notes were limited to notations of hypertension, neck pain, and alcohol intake.  He noted no abnormalities during the physical examination.  His assessment was limited to hypertension.  His treatment was limited to a prescription for Lisinopril.  On August 23, 2011, Dr. Cook noted the claimant described radicular pain of the right upper extremity, mid back pain, and lower back pain; however, he did not conduct a physical examination and noted that he could not review a CT scan due to a "computer glitch."  He did not assess her with any condition.  His plan was limited to Prednisone for six days for six days followed by Lortab 5.  When the claimant returned on September 12, 2011, Dr. Cook noted the claimant reported improvement of her pain and that she had degenerative disc disease of her neck and back.  He decided to continue her current pain medication without changes.  He did not note any abnormalities during a physical examination. He did not assess her with any condition.  His plan was limited to an increase in her Lisinopril and the addition of Voltaren.  Thus, it is evident that Dr. Cook based his opinion on the claimant's subjective complaints.  His findings are not

consistent with the severity of the limitations included in his opinion.  Last but
not least, he did not note any limitations regarding hazards, despite the
claimant's history of alcohol abuse.

(R. 25-26) (internal citations omitted).

The ALJ acknowledged that McLeod suffers from neck and back pain, but after a

thorough review of her treatment records, discounted Dr. Cook's assessment.  The ALJ's

decision to discount Dr. Cook's assessment is supported by substantial evidence.  Although

McLeod testified that her most disabling impairment is pain in her neck and back[5] (R. 43-44),

Dr. Cook's treatment records do not support his assessment of the severity of this

impairment.

Dr. Cook's assessment of McLeod was based on five office visits including two for

an assessment of a hepatic cyst and one for treatment of hypertension.  (R. 300-03).  While

McLeod complained of neck pain, Dr. Cook prescribed only conservative treatment, and on

her last visit, noted that McLeod was doing better.  (R. 389).  Dr. Cook assessed severe

limitations even though he did not review any x-rays or MRI scans to corroborate that

determination.  Consequently, Dr. Cook's treatment notes do not support the level of

disability he attributes to McLeod.

In addition, the other medical evidence of record supports the ALJ's decision to

discount Dr. Cook's opinion.  Dr. Sam Banner performed a physical examination of McLeod

---

[5]  The ALJ discounted McLeod's testimony regarding her pain and limitations, and the plaintiff does
not challenge the ALJ's credibility findings.

on June 29, 2010.[6]  (R. 285-88).  At that time, she complained of chronic neck pain. Dr.

Banner noted some swelling on the right side of her neck.  (R. 288).  Dr. Banner noted a

decreased range of motion in her neck and back but he did not note any spasms.  (*Id*.)  In

addition, Dr. Banner noted that McLeod had no difficulty or pain getting on and off the

examining table, and she walked normally.  (R. 287).

On May 22, 2010, McLeod presented to emergency room complaining of neck, back

and shoulder pain.  (R. 265-66, 324-26).  Although her back and neck were non-tender and

there was a painless range of motion,  she was diagnosed with osteoarthritis.  (R. 267, 327).

An x-ray of her neck indicated no significant abnormality.  (R. 274)

On September 20, 2010, McLeod again presented to the emergency room complaining

of neck pain.  (R. 317-18).  McLeod suggested that she had "slept wrong."  (R. 320).  At that

time, she was diagnosed with a strained, pulled muscle and prescribed pain medication.  (R.

318).  A treatment note revealed mild swelling of the neck.  (R. 320).

The  ALJ may disregard the opinion of a physician, provided that she states with

---

[6]  On June 25, 2009, McLeod had MRI scans of her lumbar and cervical spines.  (R. 198-99).
Although degenerative disc disease was diagnosed in both spines, the disease was deemed mild.  (*Id*.)  On
March 19, 2010, an **x-ray of McLeod's chest** indicated

> [m]ultilevel degenerative disc disease throughout, particularly severe at C3-C4 and C5-C6
> and C6-C7.  There is minimal degenerative anterolisthesis of C7 on T1.  Areas of moderate
> neural foraminal narrowing are seen bilaterally in the mid cervical spine."

(R. 283, 343).

The ALJ considered this medical evidence in determining McLeod's residual functional capacity.
(R. 21-23).  In addition, it appears that Dr. Banner considered this evidence while it is clear that Dr. Cook
did not.  *Compare* R. R. 285 to R. 390.

particularity reasons therefor.  *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987).  The

ALJ examined and evaluated the treatment records for evidence supporting Dr. Cook's

assessment of McLeod's ability to work, and she considered McLeod's own testimony.  Only

then did the ALJ discount Dr. Cook's assessment of McLeod's abilities.  The evidence in the

record supports the ALJ's findings regarding Dr. Cook's assessment of McLeod.  "Even

though Social Security courts are inquisitorial, not adversarial, in nature, claimants must

establish that they are eligible for benefits." *Ingram v. Comm'r of Soc. Sec.,* 496 F.3d 1235,

1269 (11th Cir. 2007) (citing *Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir. 2001)). *See*

*also Holladay v. Bowen,* 848 F.2d 1206, 1209 (11th Cir. 1988).  This the plaintiff has failed

to do.  Based upon its review of the ALJ's decision and the objective medical evidence of

record, the court concludes that the ALJ properly rejected Dr. Cook's opinion regarding the

limitations caused by McLeod's neck and back pain.

    **B.**   **Residual Functional Capacity.**  McLeod next complains that the ALJ's

residual functional capacity ("RFC") assessment is not supported by substantial evidence

because "the record does not contain any RFC assessments completed by a treating or

examining physician which support the ALJ's RFC assessment."  (Doc. # 15 at 11).   The

ALJ concluded that the plaintiff had the residual functional capacity

> to perform less than the full range of light work as defined in 20 CFR
> 416.967(b).  Specifically, she can no more than occasionally reach overhead,
> operate foot controls, kneel, crawl, or work around temperature extremes,
> humidity, and wetness.  She cannot climb ladders, scaffolds, or ropes.  She
> cannot work around unprotected heights and dangerous equipment.  She can
> do a range of unskilled work but cannot perform complex or detailed job
> instructions.

(R. 21).

An ALJ is required to independently assess a claimant's residual functional capacity "based upon all of the relevant evidence." 20 CFR § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1546(c) ("Responsibility for assessing residual functional capacity at the administrative law judge hearing . . . level.  If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.")  *See also Lewis*, 125 F.3d at 1440 ("The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments.").  "Residual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 416.945(a)."  *Peeler v. Astrue,* 400 Fed. Appx. 492, 494 n.2 (11th Cir. 2010).

The plaintiff argues that "the ALJ is required to have evidence from a physician which supports her RFC assessment given that it is by definition 'a medical assessment.'"  (Doc. # 15 at 11).  In essence, the plaintiff contends that the record must contain a residual functional capacity determination by an examining or treating physician.  However, the plaintiff's argument conflates the nature of residual functional capacity with the responsibility for making the residual functional capacity determination.  The Commissioner's regulations clearly show who is responsible for making the residual functional capacity determination when a case has reached the administrative law judge

12

hearing.

> If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity.

20 CFR § 404.1546.

But that observation does not end the enquiry. The essential question raised by the plaintiff is whether it is necessary to have a residual functional capacity assessment by a medical provider as part of the evidence which an ALJ must consider in reaching a determination. In this case, the answer is no. The ALJ stated that she

> considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 416.929 and SSRs 96-4p[7] and 96-7p.[8] I have also considered opinion evidence in accordance with the requirements of 20 C.F.R. 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.[9]

(R. at 21) (footnotes added).

Although McLeod also complains that the ALJ's RFC is contrary to the RFC offered by her treating physician, the ALJ was not required to accept her treating physician's RFC.[10]

---

[7] This Ruling clarifies the policy of the Social Security Administration on the evaluation of symptoms in the adjudication of claims for disability benefits under title II and title XVI of the Social Security Act.

[8] This Ruling clarifies when the evaluation of symptoms, including pain, requires a finding about the credibility of an individual and explains the factors to be considered in assessing the credibility of the individual's statements about symptoms.

[9] Generally, these Rulings describe how the Commissioner evaluates and uses medical source opinions.

[10] McLeod also argues that the ALJ improperly relied on the opinion of a non-examining physician, and she should have given more weight to Dr. Cook's opinion. For the reasons already stated, the ALJ

The ALJ reviewed and considered all the medical evidence in the record in determining McLeod's RFC. The court has independently considered the record as a whole and finds that the record provides substantial support for the ALJ's conclusions. Consequently, the court concludes there was sufficient medical evidence before the ALJ from which she properly could made a residual functional capacity assessment.

McLeod accuses the ALJ of speculating on her physical abilities, and contends that the ALJ should have secured a consultative evaluation. (Doc. # 13 at 14). The ALJ did order a physical consultative evaluation, (R. 285-89), and considered that assessment in determining McLeod's RFC.

McLeod attempts to improperly shift to the Commissioner the burden of establishing the evidentiary basis from which her residual functional capacity may be determined. In the fourth step of the sequential analysis, the ALJ determines the claimant's RFC and her ability to return to her past relevant work. *Phillips*, 357 F.3d at 1238. While the ALJ has the responsibility to make a determination of plaintiff's RFC, it is plaintiff who bears the burden

---

properly discounted Dr. Cook's opinion. In addition, the ALJ only accorded some weight to the opinion of the non-examining physician because "[w]hile his opinion is generally consistent with the record as a whole, new evidence has been admitted into the record since he rendered his opinion, which obviously diminishes the value of that opinion." (R. 25)

An ALJ is entitled to rely on the opinion of a non-examining reviewing physician whose opinion is supported by the record. *See Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) ("The opinions of non-examining, reviewing physicians, . . . *when contrary to those of examining physicians*, are entitled to little weight in a disability case, and *standing alone* do not constitute substantial evidence." (emphasis added.)). *See also Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir.1990) (holding that an ALJ may rely on the assessment of a nonexamining doctor whose opinion is based on careful evaluation of the medical evidence, is not the sole medical evidence upon which the ALJ relies, and is supported by or does not contradict the opinion of the examining doctor). In this case, the ALJ did not abandon her task of assessing McLeod's residual functional capacity to the non-examining state agency physician, but, as required by 20 C.F.R. § 404.1546(c), the ALJ independently assessed McLeod's residual functional capacity based on all of the evidence in the record. *See Lewis, supra*.

14

of proving her RFC, *i.e.*, she must establish through evidence that her impairments result in functional limitations and that she is "disabled" under the Social Security Act.  *See* 20 C.F.R. § 404.1512 (instructing claimant that the ALJ will consider "only impairment(s) you say you have or about which we receive evidence" and "[y]ou must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled").  *See also Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001) (it is claimant's burden to prove RFC, and ALJ's responsibility to determine RFC based on medical records, observations of treating physicians and others, and claimant's description of limitations).

In support of her position regarding her RFC, McLeod relies on *Doss v. Astrue*, CA 07-0375-C, 2007 WL 4570551 (S.D. Ala. Dec. 20, 2007), a case from another district, for the proposition that the Commissioner's residual functional capacity assessment must be supported by a residual functional capacity assessment of a treating or examining physician. *See* Doc. # 15 at 13 ("the record is completely devoid of a RFC assessment completed be a treating physician or examining physician that supports the ALJ's RFC assessment."  But *Doss, supra*, is most assuredly not the last word on this issue.  In *Packer v. Astrue*, 2013 WL 593497 (S.D. Ala. Feb. 14, 2013), Chief Judge Granade rejected the absolutism of requiring a RFC assessment by a treating physician, noting that "numerous court had upheld ALJ's RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."  *Id.* at *3.  Like those other courts, this court rejects the seemingly mandatory requirement that the Commissioner's fifth-step burden must be

15

supported by an RFC assessment of a physician.  The ALJ had before her sufficient medical evidence from which she could make a reasoned determination of McLeod's residual functional capacity.  Thus, she was not required to secure from a medical source a residual functional capacity assessment.

## V.  Conclusion

The court has carefully and independently reviewed the record, and concludes that the decision of the Commissioner is supported by substantial evidence.[11]

A separate order will be entered affirming the Commissioner's decision.

Done this 5th day of November, 2013.

_____ /s/Charles S. Coody _____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

---

[11]  Because the court concludes that the ALJ's residual functional capacity assessment to perform less than a full range of light work is supported by substantial evidence, the court pretermits discussion of the plaintiff's claim that under the Medical-Vocational Guidelines, she is disabled because she is limited to sedentary work.